IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terry Durant, ) | Civil Action No. 9:14-2789-BHH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden Willie Eagleton, Nurse Smith, ) | |
| and Unknown Doctor, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

      This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

      The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on October 22, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 24, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion on December 1, 2014.



1

Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that at the time he filed this action, he was an inmate at the Evans Correctional Institution, part of the South Carolina Department of Corrections.[3] Plaintiff alleges that on December 10, 2013, he fell out of his bunk, landing on his right shoulder. Plaintiff alleges he heard a "popping noise" in his shoulder and was taken by "Officer McNeil" to medical for observation. Plaintiff alleges a nurse gave him an ice pack, some pain medication and told him to report for an x-ray the following day. Plaintiff alleges he thereafter returned to medical the following morning, but was advised by the nurse that since he had "full arm rotation", no x-ray would be performed. Plaintiff continued to complain of "persistent and ongoing pain," and the following day, December 12, 2013, he wrote to medical complaining about not having an x-ray, an MRI, or an examination by a medical doctor. Plaintiff alleges that he asked "several times to see a doctor," and that he also wrote the Defendant Warden Eagleton about his accident, about his inadequate medical care, and about his ongoing pain.

Plaintiff alleges that he signed up for sick call on December 20, 2013, but was "turned away by Officer Jacobs because my inmate number, and room number were mis-matched". Plaintiff alleges that on December 22, 2013, "Nurse Cutchin" wrote him stating that "only a provider

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]Plaintiff has, since the filing of this action, apparently been released from incarceration. See Court Docket No. 28.



can order an x-ray". Plaintiff alleges that he also received a response from Warden Eagleton, telling him to see "Lt. Hicks". Plaintiff alleges he thereafter spoke to Lt. Hicks on December 30, 2013, who told him that "Nurse Stokes" had put him in to have an x-ray, but that the "medical doctor" had "denied it." Plaintiff alleges that he was finally seen by "Nurse Washington" on December 23, 2013. Plaintiff alleges that Washington told him that he had turned down a "sling" days earlier (which Plaintiff alleges was false), but that since he now wanted a sling Washington gave him an order to receive an arm sling. Plaintiff alleges he received the arm sling on December 25, 2013.

Plaintiff alleges that on January 7, 2014, he finally received an x-ray, but complains that in order to learn the results of his x-ray he had to sign up for sick call. Plaintiff also alleges that on January 17, 2014, he was required to turn his arm sling back into medical, even though he was still having pain. Plaintiff complains that no one in the medical department had a "medical action plan" for rehabilitation of his right shoulder, and that when he wrote to the Defendant Nurse Smith on January 21, 2014 to find out the results of his x-ray, he was told that the doctor "saw no broken bones" and had ordered no further treatment.

Plaintiff alleges that he pursued a prison grievance concerning his treatment, and that as a result an orthopedic appointment was ordered. Plaintiff alleges he was seen by Dr. Benjamin Lewis on July 1, 2014, but that Dr. Lewis was a "medical doctor", not an "orthopedic doctor". Plaintiff alleges that Dr. Lewis told him that he had torn his ACL, and that he would request that Plaintiff be seen by an orthopedist.[4]

Plaintiff complains about the medical care he received for his injury as well as that the Evans Correctional Institution had "no medical doctor on site". Plaintiff further complains

---

[4]Plaintiff is not sure whether Dr. Lewis is the doctor who had previously denied him his x-ray, and has therefore named "unknown doctor" as the physician Defendant in this case.

3



generally about inmates failing to receive proper medical care at ECI. Plaintiff alleges that the nurses at ECI act as "satellite liaisons" to the medical doctors, resulting in the "nurses acting as doctors in most cases". Plaintiff further alleges that the Defendant Nurse Smith's lack of concern about his medical issues, as well as the Defendant Warden Eagleton's failure to take any action on his behalf despite being knowledgeable about what was going on, violated his constitutional rights.

Plaintiff seek preliminary and permanent injunctive relief requiring the Defendants to provide him with an "orthopedic appointment" and to provide him with proper medical care for his shoulder,[5] as well as monetary damages. See generally, Plaintiff's Verified Complaint, with attached exhibits [Grievance documents].

In support of summary judgment in this case, the Defendants have provided a copy of Plaintiff's medical records for the relevant time period. Plaintiff's medical records reflect that he reported to medical on the morning of December 10, 2013 after falling off of his top bunk. He was seen by Nurse Samuel Lisenby.[6] Plaintiff's records reflect that Plaintiff arrived "ambulatory from dorm", and that other than his shoulder he denied any other injuries. There was some swelling noted in the right upper shoulder area, but there was no bruising noted, Plaintiff was able to lift his arm out to the side and forward and backward, and wiggle his fingers on the affected hand freely. Plaintiff was assessed with a "sprain", and was provided with an ice pack, Tylenol and Motrin. He was to follow up with nursing later in the day as well as to notify medical of any changes in his

---

[5]As Plaintiff is no longer incarcerated with the SCDC, his request for injunctive and/or declaratory relief is moot. See Williams v. Griffin, 952 F.2d at 823 ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylor v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. With respect to Plaintiff's damages claim, this claim survives his release from incarceration. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Even so, as discussed hereinbelow, Plaintiff's claim for damages is also subject to dismissal.

[6]Nurse Lisenby is not a named Defendant in this case.

4



condition. The nurse notes further reflect that, although Plaintiff is a barber and he was advised to rest his arm and not work until his pain had subsided, he denied any need for a work excuse. The treatment notes reflect that Plaintiff "left medical in stable condition back to dorm with given materials in hand".

Plaintiff's records show that the information relating to Plaintiff's medical consult were provided to Dr. John McRee to review, and that Dr. McRee determined that while a sling would be ok, there was no need for an x-ray because Plaintiff had full range of motion in his arm. When Plaintiff returned to medical later that day, he was seen by Jodi Cutchin, LPN.[7] However, upon being advised that the doctor had not ordered an x-ray because Plaintiff had full range of motion, but that he could have a sling, Plaintiff "became angry and left medical without any further discussion". This consult was shared with Dr. McRee, who noted that Plaintiff had a "right to refuse". Dr. McRee stated that there was "nothing magic about -rays", that Plaintiff should expect pain this soon after a fall, and that his condition should improve with time.

Plaintiff's medical records show that he returned to the medical office on December 13, 2013, where he was seen by Nurse Shelly Stokes.[8] Plaintiff told Nurse Stokes that he had fallen off of his bed a couple of days ago, that he thought he had dislocated a bone in his right shoulder, and would like to get an x-ray. The records for this consult reflect that Plaintiff's shoulders were the same height, that he was able to lift his right arm without difficulty, and had no obvious abnormalities. Plaintiff was provided with some Ibuprofen, and was instructed to return to medical if his symptoms persisted or worsened. Nurse Stokes also indicated that Plaintiff's request for an x-ray would be forwarded to the physician for review. Plaintiff's request was subsequently denied

---

[7]LPN Cutchin is not a named Defendant in this case.

[8]Nurse Stokes is not a named Defendant in this case.



by LPN Cutchin on December 22, 2013, and by Dr. Michael Hughes on December 23, 2013, both for the reasons previously given.

Plaintiff's medical records reflect that he then returned to medical on December 23, 2013, still complaining of right shoulder pain and requesting an x-ray. Plaintiff was seen by Nurse Ronda Washington.[9] Plaintiff was noted to be in no acute distress, he had full range of motion in his right shoulder, there was no bruising noted, no redness, no excessive swelling, he was able to lift his arms above his head without pain or facial grimacing being noted, was able to extent his arms forward without pain or facial grimacing noted, and there were no deformities noted when his right shoulder was compared with his left. Plaintiff was assessed with musculoskeletal discomfort. These records reflect that Plaintiff was told that an x-ray had not been ordered because he had full range of motion in his right shoulder, but that Plaintiff was nevertheless "adamant about x-ray". Further, although he had initially refused the offer of a sling, he indicated that he would take it at that time.

Nurse Washington forwarded Plaintiff's requests to Dr. Hughes, who this time approved Plaintiff's requests. Plaintiff was then issued an arm sling on December 25, 2013, and was scheduled for a right shoulder x-ray to be performed on January 7, 2014. Plaintiff's medical records reflect that he had his x-ray on January 7, 2014, following which Dr. W. J. Bayard noted Plaintiff had a "mild ac separation, otherwise normal exam". There was no evidence of fracture, and Plaintiff had a normal anatomic relationship between the glenoid and humerus. These results were provided to ECI Medical, where they were signed off on by both Nurses Lisenby and Stokes, as well as by Dr. Hughes.

Plaintiff was seen again on January 8, 2014 and March 24, 2014, but was apparently

---

[9]Nurse Washington is not a named Defendant in this case.

6



a no show for sick call on June 3, 2014.[10]

On June 5, 2014, Plaintiff was seen in medical for complaints that his right shoulder still hurt. Plaintiff was seen by Nurse Amy Whittington.[11] It was noted that Plaintiff had had an x-ray on January 7, 2014 that showed a mild ac separation only. Nonetheless, Plaintiff complained that his shoulder bothered him daily, some days worse than others, and his deltoid muscle appeared to have "slightly dropped", although his shoulders were not asymetrical. Plaintiff was able to raise his arm above his head and go through a range of motion without grimacing. Plaintiff also complained about having chills at night and losing energy, so some tests were apparently ordered for liver/lipid profiles (unrelated to his shoulder complaints). He was otherwise issued some Tylenol and ibuprofen to be used as needed. Plaintiff was advised that they had no doctor present at that time, but that his complaint would be forwarded to the provider for any suggestions. Plaintiff exited without distress. Dr. McRee approved Plaintiff for an orthopedic consult that same day, as well as his other unrelated tests.

Plaintiff thereafter underwent some other testing relating to blood work, and it was also noted on June 11, 2014 that Plaintiff's orthopedic consult would be performed at the Kirkland Correctional Institution. Plaintiff was thereafter seen in a doctor's clinic on July 1, 2014 by Dr. Lewis, who confirmed the results of Plaintiff's x-ray. Dr. Lewis found that Plaintiff had normal range of motion but complained of pain on movement in his ac joint.

---

[10]While Plaintiff alleges in his Complaint he was refused medical care by the Defendant "Nurse Smith" on January 21, 2014, there is no record of any medical visit on that date. As noted hereinabove, Plaintiff was seen on January 8, 2014, but the record does not indicate who the attending medical provider was. He was seen by Nurse Administrator Amy Smith on March 24, 2014, and his "no show" on June 3, 2014 was entered by Nurse William K. Smith. The Defendant "Nurse Smith" in this case is Amy Smith.

[11]Nurse Whittington is not a named Defendant in this case.



On August 22, 2014 it was noted that Plaintiff had been scheduled to go to the Kirkland Correctional Institution Orthopedic Clinic on August 25, 2014, but that this appointment had been rescheduled for September 3, 2014. Plaintiff was then seen in the orthopedic clinic on September 3, 2014, where it was noted that Plaintiff's condition was non-operable, with a recommendation that Plaintiff perform strengthening and range of motion therapy exercises. See generally, Defendants' Exhibit 4 (SCDC Health Services Medical Summaries), and 5 (X-ray results from Image Care, LLC, and Physician Consultation Notes dated June 5, 2014 and July 1, 2014).

In opposition to the Defendants' motion, Plaintiff has submitted some Request to Staff Member forms, some Orders to Report to Medical, and a copy of a grievance form. In response to a Request to Staff form from December 18, 2013, Plaintiff was advised that the nurse had put him in the computer to have an x-ray, but that the physician had refused it. In response to a Request to Staff form dated January 21, 2014, Plaintiff was advised that the doctor had reviewed his x-ray report, and that there was nothing abnormal or in need of further intervention indicated on the report. Plaintiff was advised that there were no bones out of place, and that soft tissue injuries and sprains are sometimes slow to heal.[12] See generally, Plaintiff's Exhibits.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the

---

[12]This Request to Staff response is signed by Nurse Amy Smith, and is apparently the denial of x-ray referenced by Plaintiff in his Complaint.



opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

In order to proceed with a claim for denial of medical care as a constitutional violation, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. Rather, the evidence before this Court, including Plaintiff's medical records as well as Plaintiff's own statements in his filings and exhibits, shows that Plaintiff received continuous and ongoing treatment for his medical complaints. He was regularly seen by nurses, nurse practitioners, as well as by at least two (2) physicians. His medical summary notes were also reviewed by physicians on a regular basis, as is clearly shown in the SCDC Health Services Medical Summaries. Plaintiff also did receive an x-ray, just not right away as he desired. In any event, the results of his x-ray showed only a mild ac separation with no evidence of fracture, which was



9

determined to be a non-operable injury that would just have to heal on its own over time. None of the medical evidence provided to this Court shows that the Defendants (including any of the physicians who might qualify as the "unknown doctor" in the Complaint), or any other medical personnel, were deliberately indifferent to Plaintiff's serious medical needs. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].[13]

Plaintiff's complaint is quite simply that he was primarily seen by nurses or nurse practitioners when he wanted to be seen by a physician, and that he wanted to have an x-ray of his

---

[13] Further, with respect to the Defendant Eagleton, while public officials such as Eagleton are subject to monetary damages under § 1983 in their individual capacities, the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 cases. See Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). There is no evidence, or even any allegations to show, that Eagleton was responsible for Plaintiff's medical care. Eagleton was the Warden of the prison, not a physician, and cannot be held liable for any medical decisions made by any of the prison medical personnel just because they are employees of the prison. Supervisory officials may be held liable in a § 1983 action only for an official policy or custom for which they are responsible and which resulted in illegal action. See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). No such policy or custom is alleged here. Rather, Plaintiff's complaint is that the medical personnel involved in his case did not make (in his opinion) the proper medical decisions about what should be done about his shoulder. See, discussion hereinabove, supra and infra. Eagleton was entitled to rely on the judgment and decisions made by the medical professionals who saw the Plaintiff with respect to Plaintiff's medical care. Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]. Hence, even if the Court were to find that Plaintiff's claims against the other named Defendants are sufficient to survive summary judgment, Eagleton would be entitled to dismissal as a party Defendant.

10



shoulder taken even though the medical personnel who examined him determined, based on the results of their examinations or review of the consult notes, that an x-ray was not necessary.[14] The medical professionals involved in Plaintiff's case evaluated Plaintiff's condition and rendered a judgment as to the type of care and treatment warranted based on their professional experience and judgment, and Plaintiff's mere lay disagreement with the opinions or diagnoses of these medical professionals, without any contrary *medical* evidence to show that any medical professional violated the requisite standard of care for his complaints, is not sufficient to maintain a §1983 deliberate indifference lawsuit.  See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).

      While Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence showing that Plaintiff was regularly seen and evaluated by medical personnel for his complaints and which refute Plaintiff's claims.  Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence

---

[14]Although Plaintiff complains about these decisions, these opinions were eventually confirmed by the fact that, when Plaintiff did finally obtain an x-ray, it was determined that no further medical treatment (other than what was or had already been provided) was necessary for his condition.



insufficient to defeat summary judgment on deliberate indifference claim]; <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though <u>pro</u> <u>se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; <u>Levy</u>, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].

Plaintiff may, of course, pursue a claim in state court if he believes that the medical care provided to him constitutes malpractice. However, that is not the issue before this Court. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs, the standard for a constitutional claim, and Plaintiff's federal § 1983 medical claim should therefore be dismissed. See <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; <u>Estelle</u>, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 29, 2015
Charleston, South Carolina



13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

14

